

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 21, 2025

**BY ECF AND EMAIL**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Stephanie Davila*, 24 Cr. 467 (LGS)

Dear Judge Schofield:

      The defendant in this case, Stephanie Davila, is scheduled to be sentenced on March 10, 2025, at 11:00 a.m., having pleaded guilty to Count One of Information 24 Cr. 467 (LGS) (the "Information"), which charged Davila with conspiring to commit honest services wire fraud, in violation of Title 18, United States Code, Section 371. The parties have stipulated to an applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 12 to 18 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons below, the Government submits that a sentence within the Stipulated Guidelines Range is warranted.

**I.**      **Background**

      **A. Background on the New York City Department of Correction and Rikers Island**

      The jail facilities complex located on Rikers Island, in the Bronx, New York ("Rikers Island"), is operated by the New York City Department of Correction ("DOC"), a municipal agency that had a fiscal year 2021 budget that included $8,286,000 in federal funding. (PSR ¶¶ 8, 12.)[1] To operate its jail facilities, the DOC employs correction officers, among other jail personnel. The primary duty of correction officers is to ensure the care, custody, and control of the DOC inmate population. (*Id.* ¶ 11.) In connection with that duty, correction officers participate in inspections and searches of inmates and DOC facilities, and are tasked with, among other things, ensuring that contraband is not brought into the facilities at which they work. (*Id.*)

---

[1] Citations in the form of "PSR __" are to the Final Presentence Report docketed on October 25, 2024 (Dkt. 35).

Hon. Lorna G. Schofield                                                                                          Page 2
February 21, 2025

According to the DOC Employee Rules and Regulations, employees of DOC facilities, including correction officers, "shall not enter into any transaction with an inmate, nor carry, convey, or make accessible to an inmate within a facility/command any intoxicant, opiate, narcotic, or other contraband article, nor traffic with an inmate in any manner." The DOC Inmate Handbook defines "contraband" to mean "any item that is not sold in the commissary, that is not on the approved list of permissible items, that is possessed in more than the approved amount[,] or that the inmate does not have permission to possess," including, "items that may disrupt the safety, security, good order and discipline of the facility." The DOC Inmate Handbook expressly prohibits inmates from possessing drugs and cellphones, stating that inmates "shall not sell or exchange prescription drugs or non-prescription drugs" and that they shall not possess any type of electronic telecommunication device or any part of such instrument. (*Id.* ¶ 10.)

DOC employees, including co-conspirator CW-1, who at all relevant times was a correction officer assigned to the Anna M. Kross Center on Rikers Island ("AMKC"), receive training on employee rules and regulations, which, as described above, prohibit correction officers and other employees from, among other things, entering into transactions with inmates and providing inmates with contraband. (*Id.* ¶¶ 8, 11.)

### B. The Defendant's Offense Conduct

From at least late 2020 until at least in or about early 2021, the defendant, while she was employed as a New York City DOC correction officer, smuggled prison contraband, including controlled substances, into a DOC facility, and provided that contraband to at least one Rikers Island inmate, separately-indicted defendant Kristopher Francisco ("Francisco") (24 Cr. 388 (LGS)), with whom Davila was engaged in a sexual relationship and to whom she is now married.[2] During that time, Davila also opened a bank account which received thousands of dollars in payments for Francisco's contraband sales at the facility. (PSR ¶ 105.)

Thereafter, in mid-2021, Davila resigned from the DOC. Yet her agreement to smuggle contraband onto Rikers Island for Francisco's benefit continued. Specifically, from at least July 2021 through August 2021, Davila conspired with others, including Francisco, to bribe a correction officer (CW-1) to smuggle contraband—including fentanyl, marijuana, synthetic cannabinoids (more commonly known as "K2"), cigarettes, and cellphones—to Francisco and other inmates inside the AMKC. (PSR ¶¶ 8-9.) To carry out the scheme, Davila met with CW-1 in the Bronx, New York, and provided CW-1 with contraband and cash bribes. (*Id.*) In exchange for these bribes, CW-1 brought the contraband into the AMKC and delivered it to Francisco and his inmate associates. (*Id.*)

For example, on July 13, 2021, Davila met with CW-1 in the Bronx, whereupon she provided him with contraband, including a cellphone (the "Contraband Cellphone"), and $5,000

---

[2] The parties agree that Davila's contraband smuggling activity while she was a DOC employee is not part of the honest services wire fraud conduct contemplated by Count One of the Information. However, the plea agreement provides that the Court can consider this conduct at sentencing.

Hon. Lorna G. Schofield  Page 3
February 21, 2025

in cash bribes. The following day, CW-1 smuggled the Contraband Cellphone to Francisco. (PSR ¶¶ 15-22.)

On August 6, 2024, after a series of calls between Davila and CW-1, CW-1 smuggled additional contraband to Francisco. (*See id.* ¶ 23-24.) A few days later, on August 11, 2021, correction officers searched Francisco's cellblock, and recovered the Contraband Cellphone, multiple other cellphones, cigarettes, marijuana, and sheets of paper soaked in K2. (*Id.* ¶¶ 22, 25.) Law enforcement agents then reviewed the contents of the Contraband Cellphone, and found, among other things, photographs of Francisco and Davila; text messages between Francisco and Davila; photographs of packages containing a green leafy substance consistent with the appearance of marijuana or K2 (depicted in the below right photograph); and the below left photograph of Francisco holding a bag of cigarettes and packages, wrapped in green cellophane, containing substances consistent with the appearance of marijuana or K2. (*Id.* ¶ 22; Dkt. 1 at 6.)



Similarly, on August 23, 2021, following recorded jail calls between the defendant and Davila discussing (in coded language) Davila's transfer of a bribe payment and an envelope believed to contain contraband to CW-1, CW-1 provided an envelope to the defendant inside the AMKC. (*Id.* ¶ 26.)

All told, Davila met with CW-1 on four or five occasions to provide CW-1 with cash bribes and contraband, including cigarettes, marijuana, two cellphones, and sheets of paper that Davila told CW-1 were saturated in fentanyl, and two cellphones. (*Id.* ¶ 29(f).) CW-1 then smuggled that contraband to the defendant inside the AMKC. (*Id.* ¶ 29(g).) Davila paid somewhere between $12,000 and $15,000 in cash bribes to CW-1, and, based on financial tracing, the Government conservatively estimates the value of the contraband smuggled into AMKC was approximately $40,000. (*Id.* ¶¶ 29(f), 33.)

## II. Procedural History

On August 7, 2024, the defendant pleaded guilty to Count One of the Information, pursuant to a plea agreement, before Magistrate Judge Jennifer E. Willis. (*Id.* ¶ 3.) On August 19, 2024, this Court entered an order accepting the defendant's guilty plea. (Dkt. 31.) As set forth in the plea agreement, the applicable Guidelines offense level is 13, the defendant's stipulated Criminal History Category is I, and the Stipulated Guidelines Range is 12 to 18 months' imprisonment.

In a sentencing memorandum filed on February 18, 2025, the defendant asks the Court to impose a sentence of time served. (Def. Sub. (Dkt. 38) at 1.) The defendant principally argues that she had a tumultuous childhood; that her criminal conduct was motivated by her love for Francisco, rather than personal enrichment; and that she will already suffer meaningful collateral consequences as a result of her criminal conviction, including her inability to pursue future work in law enforcement. Davila also argues that, if she is sentenced to a lengthy term of imprisonment, she will be unable to attend a "special program" at LaGuardia Community College, which is scheduled to commence this Fall. (*Id.* at 2-6.)

Probation agrees with the parties' assessment of the applicable Guidelines offense level, criminal history, and Guidelines range. (PSR ¶¶ 39-49, 52, 89). Probation recommends a sentence of 9 months' imprisonment. (PSR at 33.) On the one hand, Probation acknowledges that this is the defendant's first criminal conviction, that she was primarily motivated to commit the above-described conduct by her romantic relationship with Francisco, and that she suffered "a difficult and tumultuous upbringing," as detailed further in the defendant's unredacted sentencing memorandum, filed under seal with the Court. (*Id.* at 34). On the other hand, Probation notes "the seriousness of this offense, which involved a conspiracy to smuggle contraband into a New York City Department of Corrections facility, including dangerous drugs such as fentanyl and synthetic cannabinoids, thereby placing correction officers at even more risk in what is already a dangerous occupation. As a former correction officer, Davila was fully aware of the dangers of those deadly substances, and the risk they would pose to officers and inmates alike. . . . [A] sentence of imprisonment is necessary in this case in order to satisfy the objectives of punishment and deterrence, and promote respect for the law." (*Id.* at 35).

## III. Discussion

### A. Legal Framework

The Guidelines, while no longer mandatory, still provide strong guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005). A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product

Hon. Lorna G. Schofield  Page 5
February 21, 2025

of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46. To the extent the Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### B. A Sentence Within the Stipulated Guidelines Range Is Warranted

Consideration of the factors set forth in 18 U.S.C. § 3553(a) militates strongly in favor of a sentence within the Stipulated Guidelines Range in this case. The defendant, while a DOC correction officer, smuggled dangerous contraband onto Rikers Island and delivered it to an inmate, who both used and resold these items. Thereafter, as a former DOC correction officer, the defendant continued to deliver contraband to a DOC employee to be smuggled to inmates on Rikers Island in exchanger for bribe payments, and she personally paid bribes to the DOC employee. The nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment warrant a sentence within the Stipulated Guidelines Range. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).

*First*, a sentence within the Stipulated Guidelines Range of 12 to 18 months' imprisonment is required to promote respect for the law. Consistent with Probation's view, contraband smuggling in New York City jails is a serious crime that adds an additional layer of dangerousness into an already precarious environment. The smuggling and distribution of controlled substances, in particular, present the risk of both drug overdoses and violent conflict over drug turf in the prison system. And the defendant's repeated provision of contraband to be smuggled into Rikers Island in exchange for monetary bribes significantly contributed to a larger, more widespread culture of corruption and contraband smuggling at Rikers Island. Contraband cellphones also present a severe safety risk, both to inmates and those beyond the DOC. Among other things, and as evidenced in this case, they can be used to coordinate the introduction of additional contraband into prison facilities and payment of cash bribes to corrupt correction officers. But contraband cellphones can also be used to coordinate and conduct additional criminal conduct. By way of example, charges were announced in October 2024 against three Brooklyn Metropolitan Detention Center inmates who allegedly orchestrated a murder-for-hire using a contraband cellphone, which as alleged, resulted in the shooting death of an innocent bystander in Manhattan.[3] The defendant's conduct, and the environment to which it contributed, made Rikers Island a more dangerous place for DOC inmates and employees alike.

That the defendant was formerly a DOC correction officer only increases the seriousness of her conduct. The defendant, who would have received training on DOC rules and regulations governing while she was a probationary correction officer, clearly knew that what she was doing was wrong. But she worked with others to circumvent those rules, apparently out of a desire, at least in small part, for financial gain (personally and/or for Francisco), and perhaps more so to aid Francisco whom she married after having an illicit relationship. Because the defendant understood that her conduct was wrong, she took steps to conceal it, including, for example, by speaking in

---

[3] *See* Press Release, USAO-SDNY (Oct. 17, 2024), *available at* https://www.justice.gov/usao-sdny/pr/federal-inmate-mdc-brooklyn-charged-orchestrating-murder-hire-using-contraband.

Hon. Lorna G. Schofield  Page 6
February 21, 2025

code with Francisco on recorded jail calls. (*See, e.g.*, PSR ¶ 26.) Although the defendant was once responsible for maintaining order inside the Rikers Island jail facilities, she repeatedly chose to participate in a months-long contraband smuggling conspiracy—first as a correction officer and later, as a private citizen with the aid of a separate correction officer whom she bribed—that jeopardized the safety and security of inmates and DOC employees on Rikers Island.

The defendant's conduct also harmed the public's confidence in its jail system and in the officials who administer it. As courts throughout this District have recognized, bribery offenses involving public services are extraordinarily serious, because they undermine the public's trust in such services and the officials who administer them. *See, e.g.*, *United States v. Washington*, No. 24 Cr. 334 (NRB), Sentencing Transcript at 22 (S.D.N.Y. Nov. 7, 2024) (recognizing that "these type[s] of crimes cause a break down in the fabric of a civilized society, because you cannot have a civilized society when those who should be trusted, can't be."); *United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023) (recognizing, in context of public housing manager's acceptance of bribes, that "corruption is a corrosive, destructive issue" and that "[p]eople need to have faith in their government"); *United States v. Costanzo*, No. 22 Cr. 281 (JPO), Dkt. 253 at 54 (S.D.N.Y. Apr. 24, 2024) (noting that bribery of public officials is "insidious [because] it undermines the public's faith in our system"); *United States v. Rupnarain*, No. 24 Cr. 125 (VEC), Dkt. 28 at 25 (S.D.N.Y. Aug. 5, 2024) (observing that public corruption is "one of the most serious of all federal offenses"). The DOC entrusted CW-1—and previously the defendant herself—to provide legitimate services in its jails, and the defendant's criminal conduct caused a serious breach of that public trust. In short, any sentence imposed should promote public confidence that DOC employees who are entrusted with providing services inside jails do so with integrity and in accordance with the law.

*Second*, a sentence within the Stipulated Guidelines Range is necessary to achieve general deterrence and to protect the public. Specifically, such a sentence will send a strong message to those who work inside the jail system—as well as those outside the jail system who, like the defendant, are acquaintances of inmates or jail employees—that contraband smuggling in jails will not be tolerated. As this case demonstrates, the opportunities for bribing those who work inside jails are manifold, and detecting bribery and contraband smuggling inside jails is difficult. This makes it all the more important, when such criminal activity is detected, to send a strong deterrent message. A serious sentence is necessary to make clear that jail employees and their associates will suffer serious consequences if they offer or accept bribes and contraband to be smuggled into jails. Meanwhile, granting the time-served sentence proposed by the defendant will send the opposite message; it will convey to current and former correction officers that there is virtually no consequence if they smuggle dangerous drugs (including fentanyl) and other contraband into the jail system. To achieve general deterrence and respect for the law in a case of this nature, a significant sentence—one within the Stipulated Guidelines Range—is both appropriate and necessary.

*Finally*, a sentence within the Stipulated Guidelines Range is necessary to avoid unwarranted sentencing disparities. The defendant's case is one of several cases that were charged as part of a larger investigation into corruption on Rikers Island. *See, e.g.*, *United States v. Kenneth Webster*, 24 Cr. 345 (GBD); *United States v. Jason Skeet*, 23 Cr. 632 (JHR); *United States v. Kristopher Francisco*, 24 Cr. 388 (LGS); *United States v. Shanequa Washington*, 24 Cr. 334

(NRB); *United States v. Chantal De Los Santos*, 24 Cr. 508 (VEC); and *United States v. Carlos Rivera*, 24 Cr. 318 (JSR). Davila will be the sixth defendant sentenced of those cases. To assist the Court in assessing the relative culpability of these individuals and calibrating an appropriate punishment for the defendant, the Government provides the following chart:

| Defendant | Criminal History Category | Offense Level | Stipulated Guidelines Range (months) | Sentence Imposed (months) |
|---|---|---|---|---|
| Kenneth Webster | IV | 19 | 46 to 57 | 40 |
| Jason Skeet | I | 19 | 30 to 37 | 37 |
| Kristopher Francisco | IV | 15 | 30 to 37* | 37 |
| Shanequa Washington | I | 15 | 18 to 24 | 12 |
| Chantal De Los Santos | I | 13 | 12 to 18 | 15 |
| Stephanie Davila | I | 13 | 12 to 18 | |
| Carlos Rivera | I | 11 | 8 to 14 | |

\* Although the parties stipulated to a Guidelines range of 30 to 37 months' imprisonment and the Government stood by that agreement at sentencing, Probation and this Court determined that Francisco was actually in Criminal History Category V, yielding a Guidelines Range of 37 to 46 months' imprisonment.

The Government assesses the defendant to be less culpable than Webster, Skeet, and Francisco, whose respective Stipulated Guidelines, accounting for their conduct and criminal histories, accurately reflect their culpability. Among other things, Francisco (an inmate who facilitated and benefited from the contraband smuggling) and Webster (a DOC service provider and former DOC inmate), unlike the defendant, both had significant criminal histories. Although Skeet (a DOC correction officer at the time of the offense) did not have a prior criminal history, he smuggled a significantly greater amount of contraband into Rikers Island in exchange for a significantly higher value in bribes than the other defendants listed above.

The Government instead views the defendant in a broadly similar category as Washington and De Los Santos. The defendant, De Los Santos, and Washington each played an important, but distinct, role in the contraband smuggling conspiracy: the defendant and De Los Santos each provided another correction officer with bribe payments and contraband to be smuggled into Rikers Island, while Washington accepted bribe payments and personally smuggled contraband into Rikers Island. (As noted above, the defendant, while she was employed by DOC, also personally smuggled contraband into the DOC on numerous occasions, though she apparently did so out of love for Francisco and to share control of his contraband proceeds, and not in exchange for monetary bribes.)

In certain respects, the defendant is *more* culpable than De Los Santos and Washington, including in that she and Francisco earned more money from their criminal conduct than De Los Santos or Washington. (*Compare* PSR ¶ 101 (parties' stipulated forfeiture of $40,000 for the defendant) with 24 Cr. 508 (VEC), Dkt. 42 (forfeiture of $21,600 for De Los Santos) and 24 Cr. 334 (NRB), Dkt. 32 (forfeiture of $13,000 for Washington).) And Washington's conduct involved bribes and contraband smuggling with her other complaint co-defendant, Webster, in which Washington was not involved. On the other hand, whereas the defendant and De Los Santos were former public officials at the time of the charged conduct, Washington was a DOC employee at the time of the charged conduct. But that discrepancy is accounted for by the Guidelines, which

Hon. Lorna G. Schofield                                                                                                     Page 8
February 21, 2025

appropriately assessed Washington (but not the defendant or De Los Santos) an increase of two offense levels under U.S.S.G. § 2C1.1(a)(1). The Government also views De Los Santos, a former DOC correction officer who provided contraband to be smuggled into Rikers Island at the request of, and in part for the benefit of, an inmate with whom she a romantic relationship, as in a similar category as the defendant.

      The Government views Rivera, a DOC correction officer who smuggled contraband into the DOC in exchange for bribes and who is currently participating in this Court's Young Adult Opportunity Program after a felony guilty plea, as the least culpable defendant, in part because he received only $2,000 in bribe payments in connection with his conduct.

      Accordingly, the Government respectfully submits that the respective sentencing ranges reflected in the above chart are largely commensurate with the defendants' relevant culpabilities, and that a sentence within the Stipulated Guidelines Range is necessary to avoid unwarranted disparities.

      In short, the need to avoid unwarranted sentencing disparities, considered in combination with the serious nature and circumstances of the defendant's criminal conduct, the need to achieve general deterrence, and the need to promote respect for the law, warrant a sentence within the Stipulated Guidelines Range.

Hon. Lorna G. Schofield  Page 9
February 21, 2025

## IV. Conclusion

For these reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 12 to 18 months' imprisonment is warranted. In addition, the Government respectfully requests that during the sentencing proceeding, the Court orally order forfeiture in the amount of $40,000.[4] Finally, the Government requests that the Court impose a period of three years' supervised release to follow any term of imprisonment, with the special conditions set forth in the PSR.[5] (*See* PSR at 38.)

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney for
the Southern District of New York

By: _____
Adam Z. Margulies
Jonathan E. Rebold
Assistant United States Attorneys
(212) 637-2345 / 2512

cc: Lawrence D. Gerzog, Esq. (via ECF and e-mail)

---

[4] The Government expects to submit a consent preliminary order of forfeiture in advance of sentencing.

[5] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).